**Richard A. BOURIE, Complainant, Appellant,**

v.

**DEPARTMENT OF HIGHER EDUCATION, and University of Colorado Health Sciences Center, Department of Police, Respondents–Appellees,**

and

**State Personnel Board, Appellee.**

**No. 95CA0464.**

Colorado Court of Appeals, Div. III.

May 16, 1996.

Rehearing Denied June 27, 1996.

Certiorari Denied Jan. 13, 1997.

F. Anthony Van Deusen, Denver, for Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Daniel J. Wilkerson, Special Assistant Attorney General, Denver, for Respondents–Appellees.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, G. Charles Robertson, Assistant Attorney General, Denver, for Appellee.

Opinion by Judge ROY.

Complainant, Richard A. Bourie, appeals the order of the State Personnel Board (Board) affirming the preliminary finding of an Administrative Law Judge (ALJ) that respondents, the Department of Higher Education and the University of Colorado Health Sciences Center (the Center), properly took corrective action against complainant. We affirm.

Complainant is a police officer employed by the Center. On October 15, 1993, he drew his weapon during the arrest of a person suspected of committing an assault. Complainant did not request assistance prior to or during the arrest, and he questioned the suspect without advising him of his *Miranda* rights. In addition, complainant did not report to his supervisor that he had drawn his weapon during the arrest, as required by department policy.

A fellow officer who also responded to the scene of the arrest later reported the incident to the chief of police at the Center, and on November 2, 1993, the chief of police asked the assistant vice chancellor for business affairs to investigate the matter. On November 6, 1993, complainant was placed on administrative leave with pay and prohibited from entering the Center except for medical reasons.

The assistant vice chancellor reviewed reports and statements concerning the incident, interviewed complainant's fellow officers, and on November 9, 1993, notified complainant that he would conduct a pre-disciplinary meeting with complainant in accordance with Department of Personnel Rule No. R8–3–3, 4 Code Colo. Reg. 801–1.

The pre-disciplinary meeting was held November 12, 1993, following which the assistant vice chancellor concluded that complainant's actions did not warrant disciplinary action, but did warrant a "corrective action." Complainant was informed that he needed to improve his work in three areas: (1) judgment in the use of force; (2) atten-

tiveness to police procedures; and (3) communicating with supervisors.

From November 22, 1993, to April 29, 1994, complainant pursued the matter through the Center's multi-level grievance process. At the conclusion of that process, the chancellor of the Center sustained the corrective action, but directed that any record of the action be removed from complainant's file on November 17, 1995, if in the interim, no disciplinary action predicated on the excessive use of force was imposed.

On May 4, 1994, complainant appealed the chancellor's decision to the Board. An ALJ recommended that the Board uphold the action of the Center and not conduct a full hearing on complainant's appeal with respect thereto. The Board adopted the ALJ's recommendation on February 21, 1995. This appeal followed.

## I.

Complainant first argues that the use of excessive force by a police officer is a crime and that, therefore, respondents cannot take any administrative action against him on an allegation of the use of excessive force. He asserts that the only permissible course of action is the commencement of criminal proceedings, in which he would be entitled to all of the procedural protections there applicable. We do not agree.

## A.

■ Complainant first contends, essentially, that for public entities that employ peace officers, the prosecution of criminal charges pursuant to § 18–8–801, et seq., C.R.S. (1995 Cum.Supp.) is the sole remedy and procedure available to address allegations that an officer has used excessive force. We do not agree with complainant's contention.

■ Section 18–8–802, C.R.S. (1995 Cum. Supp.), as relevant to this appeal, requires peace officers who witness another officer's use of excessive force to report the incident to their superiors. Section 18–8–803(1), C.R.S. (1995 Cum.Supp.) goes on to provide, in pertinent part:

> Subject to the provisions of section 18–1–707, [special rules on use of force in making an arrest] a peace officer who uses excessive force in pursuance of such officer's law enforcement duties shall be subject to the criminal laws of this state to the same degree as any other citizen, including the provisions of part 1 of article 3 of this title concerning homicide and related offenses and the provisions of part 2 of said article 3 concerning assaults.

Section 18–8–804, C.R.S. (1995 Cum.Supp.) provides:

> Each public entity which employs any peace officer shall adopt policies or guidelines concerning the use of force by peace officers which shall be complied with by peace officers in carrying out the duties of such officers within the jurisdiction of the public entity.

Complainant's argument is that these statutes create an "affirmative obligation" for public entities "to file or cause to be filed" criminal charges against officers who use excessive force. Such an argument is, in our view, contrary to the plain meaning of the statutes. *See Moody v. Corsentino*, 843 P.2d 1355 (Colo.1993).

■ In our view, the plain language of these statutes establishes a public policy that law enforcement officers have no immunity from criminal prosecution nor are they accorded any special status with respect to the use of force except in making an arrest. There is no indication in these statutes that a public entity is required to file a criminal complaint against a peace officer for the use of excessive force, nor need such an entity forego administrative action until any criminal proceeding is completed.

## B.

Complainant further contends that because respondents essentially charged him with a crime, he was entitled to the procedural protections defendants obtain in a criminal proceeding. We disagree.

In *Jones v. Civil Service Commission*, 176 Colo. 25, 489 P.2d 320 (1971), our supreme court held that a state employee who was fired for committing what amounted to a

criminal offense was not entitled to the procedural protections of a criminal proceeding during an administrative process to determine whether he should be dismissed. The court noted that the employee was not charged with a criminal offense and that any statements he made were not used against him in a criminal proceeding.

■ We conclude that *Jones* controls and, therefore, hold that complainant was not entitled to criminal procedural protections. As in *Jones,* complainant was not charged with an offense, nor were any statements he made used against him in a later criminal proceeding. The proceedings that led to the corrective action against complainant were administrative in nature and were not analogous to a criminal prosecution. *See Jones v. Civil Service Commission, supra.*

## II.

Complainant next contends that respondents denied him due process during the administrative process. We perceive no error.

### A.

In this regard, complainant first argues that the assistant vice chancellor did not properly inform him of the disciplinary charges against him nor did he provide complainant with any information for him to refute at the pre-disciplinary meeting. We do not agree.

■ Procedural due process requires notice and an opportunity to be heard. *People in Interest of D.G.,* 733 P.2d 1199 (Colo. 1987). These principles apply to administrative proceedings. *Electric Power Research Institute, Inc. v. City & County of Denver,* 737 P.2d 822 (Colo.1987). However, the notice required in an administrative proceeding does not require the same formality, specificity, and detail that is required in a criminal proceeding. *See generally Chiappe v. State Personnel Board,* 622 P.2d 527, 532 (Colo. 1981) ("Due process calls for the procedural protections which the particular situation demands.").

■ Department of Personnel Rule 8–3–3(D), 4 Code Colo. Reg. 801–1, requires an appointing authority to meet with an employee facing disciplinary action, to present the information to the employee, and to give the employee an opportunity to admit or refute the information. Due process requires that respondents comply with these standards. *See Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984); *Shaball v. State Compensation Insurance Authority,* 799 P.2d 399 (Colo.App.1990).

■ Here, the ALJ held, with record support, that complainant was given sufficient notice and a meaningful opportunity to refute the charges. The assistant vice chancellor's letter advising the complainant of the initial meeting stated:

At the meeting, we will be discussing your alleged failure to comply with standards of effecient [sic] service or competence. Specifically, we will discuss: the incident on October 15, 1993, which resulted in the arrest of [the suspect]; whether or not you exercised proper judgment in the incident; and whether or not you followed proper police and departmental procedures.

The notice was, in our view, sufficient to provide complainant with notice of the purpose of, and the matters to be addressed at, the meeting.

■ Neither the regulation nor fundamental due process requires that the appointing authority provide an employee with the reports, statements of witnesses, or other evidence relating to the matter prior to the initial meeting. The regulation provides, instead, that the employee be permitted to refute the charges against him at the meeting. *Shumate v. State Personnel Board,* 34 Colo.App. 393, 528 P.2d 404 (1974). Here, the record shows that complainant was given an opportunity to refute the charges against him, and therefore, he was provided with sufficient procedural due process with respect to the initial meeting.

### B.

■ Complainant next argues that the assistant vice chancellor deprived him of his substantive due process rights because there was insufficient evidence to support the corrective action. We disagree.

Here, although there was conflicting evidence, there was sufficient evidence in the

record for the ALJ and the Board to conclude that the assistant vice chancellor acted appropriately in issuing a corrective action. *See Charnes v. Lobato,* 743 P.2d 27 (Colo. 1987). Therefore, there was no deprivation of complainant's due process rights.

### III.

Last, complainant argues that the Board erred in not granting him an evidentiary hearing. Again, we perceive no error.

 The Board's interpretation of its own rules is generally entitled to great weight unless it is plainly erroneous or inconsistent with such rule or the underlying statute. An action of the Board will be upheld if there is sufficient evidence in the record to support it. *Bishop v. Department of Institutions,* 831 P.2d 506 (Colo.App.1992).

Section 24–50–123, C.R.S. (1988 Repl.Vol. 10B), which deals with grievance proceedings, provides:

> The board shall, by rule, adopt a uniform grievance procedure to be used by all principal departments and agencies for employees in the state personnel system. The grievance procedure shall provide an orderly system of review for all grievances, except those arising under section 24–50–125. The decision of the appointing authority shall be final; except that the board *may* review the decision of the appointing authority and, upon such review, shall uphold the decision unless the board finds that the decision was made arbitrarily or capriciously. (emphasis added).

Section 24–50–125, C.R.S. (1988 Repl.Vol. 10B), which deals with discipline, provides that the Board shall hold a hearing within 45 days of the appeal upon request of the employee when the employee has been dismissed, suspended, or otherwise disciplined by the appointing authority.

Section 24–50–123 permits hearings before the Board on appeals of employee grievances, while § 24–50–125 provides for mandatory hearings upon the request of the employee when discipline is involved.

Department of Personnel rules provide that an employee may appeal any decision of the appointing authority to the Board. Department of Personnel Rule No. R10–2–3, 4

Code Colo. Reg 801–1. The rules further provide that "a preliminary review is used as a screening device . . . to determine whether or not valid issues exist which merit a full hearing." Department of Personnel Rule No. R10–4–2, 4 Code Colo. Reg. 801–1.

Thus, while Department of Personnel rules allow for an appeal of both grievances and disciplinary actions to the Board, the statutes give the Board discretion as to whether to hold hearings on appeals of grievances involving non-disciplinary actions.

Here, no disciplinary action was taken. Therefore, no hearing was required. The ALJ made preliminary findings and recommended that the Board uphold the corrective action imposed by the appointing authority and further recommended that no evidentiary hearing was necessary. Both the ALJ and the Board followed the applicable rules and regulations.

In our view, there was no abuse of discretion in either upholding the corrective action of the appointing authority or in denying the hearing.

Accordingly, the order is affirmed.

PLANK and NEY, JJ., concur.